UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 16-10903-RWZ


GREGG TSOUVALAS

v.

NANCY A. BERRYHILL,[1]
Acting Commissioner of the Social Security Administration


MEMORANDUM OF DECISION

July 13, 2017


ZOBEL, S.D.J.

　　Plaintiff Gregg Tsouvalas appeals from a final decision by the Acting

Commissioner of Social Security ("the Commissioner") upholding an administrative law

judge's ("ALJ") determination that plaintiff did not qualify for disability insurance benefits

("DIB").  Plaintiff contends that the ALJ erred by failing to adequately consider certain

evidence of his impairments.

**I.　　Background**

　　Plaintiff filed an application for DIB on December 11, 2012, alleging disability

beginning on March 1, 2008.  His claim was first denied on May 1, 2013, and again

upon reconsideration on September 30, 2013.  He thereupon filed a request for a

---

[1]　　Pursuant to Fed. R. Civ. P. 25(d), Nancy A. Berryhill has been substituted for Carolyn W.
Colvin as Acting Commissioner of the Social Security Administration.

hearing before an ALJ.  A hearing, at which plaintiff and a vocational expert ("VE")
testified, was held on December 15, 2014.  On the day of the hearing, plaintiff and his
counsel submitted a request to amend plaintiff's onset date to August 22, 2012.  The
ALJ acknowledged the request at the hearing and entered it into evidence.

### A.    Applicable Statutes and Regulations

To receive Social Security DIB, a claimant must be unable "to engage in any
substantial gainful activity by reason of any medically determinable physical or mental
impairment which . . . has lasted or can be expected to last for a continuous period of
not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The impairment must be "of such
severity that [the claimant] is not only unable to do his previous work but cannot,
considering his age, education, and work experience, engage in any other kind of
substantial gainful work which exists in the national economy."  Id. § 423(d)(2)(A); see
also 20 C.F.R. § 404.1505(a).

The ALJ analyzes whether a claimant is disabled using an established "five-step
sequential evaluation process."  See 20 C.F.R. § 404.1520(a)(4)(i)–(v).  Under this
framework, the ALJ first determines whether the claimant is currently engaging in
substantial gainful work activity.  If not, then at step two, the ALJ decides whether the
claimant has a "severe" medical impairment or combination of impairments, which
means the impairment or combination of impairments "significantly limits [the claimant's]
physical or mental ability to do basic work activities," id. § 404.1520(c).  If the claimant
has a severe impairment or combination of impairments, then the ALJ considers, third,
whether such meet or equal an entry in the Listing of Impairments, 20 C.F.R. Part 404,
Subpart P, Appendix 1, together with the duration requirement.  If so, then the claimant

2

is considered disabled.  If not, the ALJ must determine the claimant's residual functional capacity ("RFC"), which is "the most [the claimant] can still do despite [his] limitations," id. § 404.1545(a)(1).  The ALJ then moves to step four and determines whether the claimant's RFC allows him to perform his past relevant work.  If the claimant has the RFC to perform his past relevant work, then he is not disabled.  If the claimant does not, the ALJ decides, at step five, whether the claimant can do other work in light of his RFC, age, education, and work experience.  If the claimant can, he is not considered disabled; otherwise, he is.  "Once the applicant has met his or her burden at Step 4 to show that he or she is unable to do past work due to the significant limitation, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform."  Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001); see also 20 C.F.R. §§ 404.1512(f), 404.1560(c)(2).

>   **B.      The Initial Rejection and the ALJ's Decision**

In a February 20, 2015, written decision, structured around the five-step sequential evaluation process, the ALJ found plaintiff not disabled under the Social Security Act through September 30, 2012, the date last insured ("DLI").[2]  At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity from his amended alleged onset date of August 22, 2012, through his DLI.  Next, at step two, he determined that plaintiff had the following severe impairments through his DLI: abdominal hernia status post surgical repair, chronic obstructive pulmonary disease,

---

[2]       "The date last insured (DLI) is the last day of the quarter a claimant[] meets insured status for disability or blindness."  Social Security Administration Program Operations Manual System DI 25501.320(A)(1).  To be eligible for benefits, a claimant must demonstrate that he was disabled prior to his DLI.  See Fischer v. Colvin, 831 F.3d 31, 32 (1st Cir. 2016).

bronchitis, asthma, and obesity.[3]  At step three, the ALJ held that plaintiff "did not have

an impairment or combination of impairments that met or medically equaled the severity

of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Docket

# 10-2, at 18.

> Before moving to step four, the ALJ determined plaintiff's RFC:
>
> After careful consideration of the entire record, the undersigned finds that through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except that he was limited to climbing, balancing, stooping, kneeling, crouching, and crawling no more than occasionally, and he could never climb ladders, ropes, and scaffolds.  The claimant needed to avoid concentrated exposure to extreme cold as well as to fumes, odors, dusts, gases, and poorly ventilated areas, as well as to workplace hazards such as dangerous machinery (excluding motor vehicles) or unprotected heights.  Finally, due to limitations in pace and persistence, the claimant could work in a low-stress job, with only occasional decision-making and occasional changes in a work setting, and could not do production rate or pace work.

Id.  The ALJ explained that on August 22, 2012, plaintiff's amended alleged onset date,

plaintiff underwent elective incisional hernia repair surgery.  While the surgery itself was

successful, the ALJ wrote, "there was a complication upon extubation, and [plaintiff]

went into acute respiratory distress."  Id. at 19; see also Docket # 10-7, at 6.  Plaintiff

required re-intubation and was hospitalized until September 4, 2012, at which time he

was discharged against medical advice.  Docket # 10-2, at 19; Docket # 10-7, at 6;

Docket # 10-8, at 62–63.  The ALJ included that plaintiff's "doctors later reported that

[his] difficulty with extubation may have been related to drug use and alcohol

withdrawal."  Docket # 10-2, at 19.  Further, the ALJ noted that although plaintiff was

---

[3]       At the hearing, the ALJ asked plaintiff's counsel if he was "contending any listing or a step five case," to which plaintiff's counsel responded that "[t]his is a step five case."  Docket # 10-2, at 42–43.  Nonetheless, in his decision ,the ALJ considered whether plaintiff's impairments met or equaled a listed impairment at step three.

hospitalized for pneumonia in November 2012, "this hospitalization took place after [plaintiff's DLI], and there is no indication in the record that this condition was so severe as to be disabling for a period of 12 months." Id. at 20.  After citing several factors he considered, the ALJ found:

> Despite the claimant's allegations of total disability during the relevant period, the evidence indicates that the claimant had one major health crisis during this time, likely complicated by drug and alcohol abuse, from which he appeared to recover in 11 days.  The remainder of the health problems he alleged at the hearing were not diagnosed or addressed until well after his date last insured.  This suggests that the claimant's symptoms did not limit his activities to the extent alleged from August 22, 2012 through September 30, 2012. . . . Thus, while the undersigned finds that the claimant had impairments that more than minimally impacted his ability to engage in work related activities during that time, the undersigned is not persuaded that the degree of impairment rendered him disabled.

Id.  The ALJ accorded the Disability Determination Services medical advisors' opinions, which supported the ALJ's RFC determination, "great weight, as they are well-supported by the medical evidence of record."  Id. at 21; he gave the opinions from plaintiff's doctors "little weight," as "these assessments were completed well after [plaintiff's DLI], and . . . none of them specifically address the period at issue in this decision."  Id.

Then, relying on the VE's testimony, the ALJ concluded at the fourth step, that through the DLI, plaintiff was unable to perform his past relevant work as a heavy equipment operator, hotel maintenance worker, small engine repairperson, and dump operator.  At step five, again relying on the VE's testimony, the ALJ found that "considering [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [plaintiff] could have performed."  Id. at 22.  The VE had testified that plaintiff would have been able to perform representative occupations such as an electrical assembler, a

hand packager inspector, and a mail sorter.  Accordingly, the ALJ concluded that plaintiff was not disabled from August 22, 2012, through September 30, 2012.

### C.    The Appeal

Plaintiff appealed the ALJ's decision to the Social Security Administration's Appeals Council, which denied review on April 5, 2016.  The ALJ's decision then became the final decision of the Commissioner, and plaintiff brought this action for reversal or remand thereof.

## II.    Standard of Review

The Commissioner's findings of fact are conclusive if based on the correct legal standard and supported by substantial evidence.  42 U.S.C. § 405(g); Seavey, 276 F.3d at 9.  Substantial evidence includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  So long as the Commissioner's determinations are "supported by substantial evidence," they must be affirmed, "even if the record arguably could justify a different conclusion." Rodriguez Pagan v. Sec'y Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).  Questions of law are reviewed de novo.  Seavey, 276 F.3d at 9.

## III.    Discussion

Plaintiff claims that the ALJ erred by failing to consider hospitalizations and evaluations that occurred subsequent to his DLI when determining whether he was disabled.  Specifically, plaintiff suggests that the ALJ treated plaintiff's "severe respiratory condition as resolving in the eleven days he was in the hospital, in August and September, 2012" and that the ALJ "expressly ignored the subsequent

6

hospitalizations in November, 2012, and in January, 2013, because they occurred after September 30, 2012, the date last insured." Docket # 13, at 1–2. Plaintiff similarly argues that the ALJ ignored his primary care physician's statements about a period after his DLI.

To be clear, there is no dispute that plaintiff's amended alleged onset date is August 22, 2012, and his DLI is September 30, 2012.[4] And plaintiff "is not entitled to disability benefits unless he can demonstrate that his disability existed prior to the expiration of his insured status." Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986) (per curiam); see also 20 C.F.R. § 404.131(b). "It is not sufficient for [plaintiff] to establish that [his] impairment had its roots before the date that [his] insured status expired. Rather, [plaintiff] must show that [his] impairment(s) reached a disabling level of severity by that date." Moret Rivera v. Sec'y of Health & Human Servs., 19 F.3d 1427 (Table), 1994 WL 107870, at *5 (1st Cir. 1994) (per curiam). "This does not mean . . . that medical evidence from the post-insured period is always wholly irrelevant. Medical evidence generated after a claimant's insured status expires may be considered for what light (if any) it sheds on the question whether claimant's impairment(s) reached disabling severity before claimant's insured status expired." Id.

Plaintiff's contention seems to be that the ALJ did not adequately consider evidence from outside the insured period to the extent such evidence reflected on whether he became disabled prior to September 30, 2012. However, such a claim is at

---

[4]     Plaintiff cites the relevant regulation as SSR 83-20. See SSR 83-20, 1983 WL 31249 (Jan. 1, 1983). This regulation pertains to establishing the onset date of disability. Here, plaintiff amended his onset date to August 22, 2012, and the ALJ used that as the onset date in his decision.

odds with both the ALJ's express statements as well as what the ALJ considered in his

decision. Prior to hearing testimony, the ALJ informed plaintiff:

> [T]he period I'm going to be most interested in is in the summer of 2012. Not
> 2014 so much, is the summer — because you need to show that you had
> become disabled by the end of September 2012. Now I can look at records
> that post-date that date if they cast evidence or cast light on that question as
> to whether your — what your condition was in the summer of 2012.

Docket # 10-2, at 37. At the conclusion of the hearing, the ALJ stated, "[i]t is a close

case. I say closer than a lot of these cases are where the window is way back, I will say

that." Id. at 88. The ALJ then said:

> I'm going to review all the records . . . I will look at the records after 2012
> to see what extent they relate back, or throw light back on your condition
> at the time, but you understand, that's the condition that ultimately
> determines whether or not you get benefits in that time period. . . . But I
> can look at other records to try and determine that.

Id. In his decision, the ALJ wrote that he "considered . . . all of [plaintiff]'s medical

records to the extent that they have any bearing on [plaintiff]'s condition during the

relevant time period. Id. at 15. The ALJ noted plaintiff's November 2012 hospitalization

and explained that "this hospitalization took place after [plaintiff]'s date last insured, and

there is no indication in the record that this condition was so severe as to be disabling

for a period of 12 months." Id. at 20.

Indeed, the ALJ, considering the evidence from the insured period as well as the

relevant evidence from outside this period, supportably found that while plaintiff "had

impairments that more than minimally impacted his ability to engage in work related

activities during that time," these impairments were not so severe as to render plaintiff

disabled under the Social Security Act. Docket # 10-2, at 20. The ALJ acknowledged

plaintiff's "one major health crisis" during the insured period, specifically the acute

8

respiratory distress plaintiff suffered as a complication from his hernia repair surgery, and then stated that plaintiff "appeared to recover" from this crisis "in 11 days."  Id.  Such a statement was reasonable in light of the medical records showing plaintiff was able to leave the intensive care unit and sign himself out of the hospital.[5]  Contrary to plaintiff's suggestions, the ALJ did not find plaintiff had recovered from all respiratory problems in 11 days.  Compare Docket # 13, at 12, 13, 15, with Docket # 10-2, at 20–21.  Rather, the ALJ found that plaintiff had severe impairments and determined that these impairments limited him to light work with restrictions.  Docket # 10-2, at 18–19.

Plaintiff contends that the ALJ should have given more consideration to the November 2012 hospitalization, explicitly discussed the January 2013 hospitalization, and given greater weight to the opinion of his treating physician, Dr. Timothy Reese.  However, the ALJ did not err in his treatment of this evidence.  The November 2012 hospitalization was for, inter alia, exacerbation of plaintiff's chronic obstructive pulmonary disease and pneumonia.  The record does not suggest, nor does plaintiff seem to be arguing, that this hospitalization demonstrates plaintiff was disabled prior to September 30, 2012.  The January 2013 admission summary stated that plaintiff had a rib fracture that was most likely caused by coughing.  Again, plaintiff offers no persuasive argument how this event bears on his disability during the insured period.  While the ALJ "was required to consider all the evidence," he "was not obligated . . . to address directly every piece of evidence."  See DaSilva-Santos v. Astrue, 596 F. Supp.

---

[5]        In addition, plaintiff's treating physician, Dr. Timothy Reese, wrote in his October 17, 2012, notes that with regard to plaintiff's chronic obstructive pulmonary disease, he was "stable post discharge."  Docket # 10-8, at 29.  Dr. Reese wrote that plaintiff had no shortness of breath at rest but did with moderate exertion and that his lungs were "clear to auscultation," with "no wheezes, no rales, no rhonchi."  Id.

2d 181, 188 (D. Mass. 2009); cf. NLRB v. Beverly Enters.-Mass., Inc., 174 F.3d 13, 26 (1st Cir. 1999) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.").

As for Dr. Reese's evaluations, Dr. Reese first examined plaintiff on October 17, 2012.  See supra note 5.  His RFC opinion was completed on December 1, 2014, and specifically stated that it applied from December 1, 2014, until June 1, 2015.  The ALJ instead primarily relied on the state agency medical advisors' opinions, who had considered plaintiff's medical record both during and after the insured period, and whose opinions the ALJ found were supported by the medical evidence in the record.  The ALJ did not err in this regard, particularly given that Dr. Reese did not treat plaintiff during the insured period and that his RFC evaluation is for a period more than two years later.

In sum, substantial evidence supported the ALJ's RFC determination for the insured period.  Cf. Moret Rivera, 1994 WL 107870, at *6 ("[W]here claimant failed to focus her proof on the relevant insured period, and the medical evidence from that time does not suggest that claimant continuously suffered from disabling symptoms, we think the ALJ supportably concluded that claimant retained the RFC to perform her past work . . . .").  This is so even considering the evidence from after plaintiff's DLI. Accordingly, I need not reach plaintiff's argument that the "ALJ erred in finding that plaintiff's respiratory difficulties had to be 'disabling for a period of twelve months,'" Docket # 13, at 17.

## IV.   Conclusion

Plaintiff's Motion to Reverse or Remand the Decision of the Commissioner (Docket # 12) is DENIED, and Defendant's Motion for Order Affirming the Decision of

10

the Commissioner (Docket # 18) is ALLOWED.

Judgment may be entered affirming the decision of the Commissioner.


_____July 14, 2017_____                     _____/s/Rya W. Zobel_____
            DATE                                                RYA W. ZOBEL

                                                   SENIOR UNITED STATES DISTRICT JUDGE

11